# Moist's Administrators' Appeal.

1. Partners took a nephew ten years old ; he lived with them seventeen years and worked for them ; they agreed to pay him wages all the time he stayed with them. *Held,* that this was evidence of a contract.

2. After the death of one partner, the survivors settled with the nephew and paid him what they thought they owed him : *Held,* that the estate of the deceased one was liable for the third of the amount.

3. One partner acting in good faith within the scope of his authority can bind his fellows, and he is not liable for loss from mistake or error in judgment.

May 23d 1873. Before READ, C. J., AGNEW, SHARSWOOD, WILLIAMS and MERCUR, JJ.

Appeal from the Orphans' Court of *Mifflin county :* No. 83, to May Term 1873. In the estate of Moses Moist, deceased.

This proceeding commenced by exceptions to the administration account of M. F. H. Kinsel and W. R. Bratton, administrators, &c., of Moses Moist, who died in 1868. The contest was as to the propriety of the credit in the account of an item of $400 paid to Jonas Moist and Joseph Moist, who were surviving partners of the decedent. The payment was the decedent's share of wages alleged to have been due by the firm to one Joseph Runk.

The auditor found that the Moists, who were brothers, had been partners in farming for a number of years. Runk, who was their nephew, came to hire with them in 1851, being then ten years of age, and with some intermissions lived and worked with them until the death of the decedent in 1868, up to which time the surviving partners admitted that the firm owed Runk $1400 for wages, and they paid him. The administrators paid the partners $400 as the decedent's share of this indebtedness. He also found that there was no fraud on the part of the surviving partners.

[Moist's Adm'rs' Appeal.]

Jonas Moist testified that Moses, Joseph and he agreed to pay Runk wages for all the time he stayed with them. Runk claimed wages just like other men. Witness thought they honestly owed Runk $1400; he was a good faithful hand.

The auditor reported that the credit should be allowed, and that the costs should be paid out of Moses Moist's estate. An exception was filed to the report, that the auditor erred in allowing the credit.

The court (Bucher, P. J.) was of opinion that there was not sufficient evidence of a contract with Runk, and that his service should be referred to relationship; he was also of opinion that there was no fraud intended by the surviving partners. They sustained the exception, disallowed the credit, and directed that the administrators should pay the costs of the proceeding and of the audit.

The administrators appealed to the Supreme Court, and assigned the decree of the Orphans' Court for error.

*D. W. Woods*, for appellants.—The presumption of a contract to pay arises from the performance of the services and is overcome only as between parent and child: Smith *v.* Milligan, 7 Wright 107; Gardner *v.* Heffley, 13 Id. 163. The two partners had the same right of settling the affairs of the firm and paying the debts after dissolution as before: Holden *v.* McMakin, 1 Parsons 298; Heberton *v.* Jepherson, 10 Barr 125; House *v.* Irwin, 3 W. & S. 347. The administrators were honest and no misconduct was alleged; they should not have been ordered to pay the costs: Graver's Appeal, 14 Wright 189; Yoder's Appeal, 9 Id. 394.

*G. W. Elder*, for appellees, cited Neel *v.* Neel, 9 P. F. Smith 349.

The opinion of the court was delivered, July 2d 1873, by

WILLIAMS, J.—It is clear that the decree in this case must be reversed. The evidence in support of Runk's claim for services rendered the partnership, was sufficient to justify the administrators in allowing the surviving partner credit for its payment, even if they would be chargeable for allowing the credit if the claim had not been shown to be valid. The testimony of Jonas Moist was positive and uncontradicted, that all the partners agreed to pay Runk wages for all the time he stayed with them; and that the surviving partners settled with him, and paid him the amount they thought they honestly owed him. How, then, can it be said that there was no evidence of a contract or express promise to pay for the services? The evidence, if believed, was clearly sufficient not only to establish the contract, but the value of the services. What better evidence then could have been given to show

that the claim was valid, and that the credit for its payment was properly allowed? If it is not just, why should the surviving partners have paid it, when two-thirds of the amount came out of their own pockets? There is no pretence that they were guilty of fraud or collusion in making settlement. The auditor failed to discover any evidence of fraud or collusion. We do not believe, say the court, that any fraud was intended here on their part. If then the settlement was made in good faith, it was binding on the administrators, and they had no right to refuse the credit. If it had been made in the lifetime of the deceased partner, it is clear that he would have been bound by it, unless he could have shown that it was fraudulently and collusively made. Why then should it not be binding on his administrators? The principle which governs the decision of this case, is that the acts of one partner within the scope of his authority, are binding on his copartners, and if he acts in good faith, he is not responsible to them for any loss arising from mere mistake or error of judgment. It was the duty of the surviving partners to make the settlement, and as it was honestly and fairly made, the administrators were bound by it. The Orphans' Court was therefore in error in surcharging the administrators with the sum of four hundred dollars, and directing that they should pay the costs of the proceeding, including the costs of the audit.

> Decree reversed, and the report of the auditor confirmed, with the exception of so much thereof as finds the costs of the audit be paid out of the money of Moses Moist, in the hands of M. F. H. Kinsel and Wm. R. B. Bratton, his administrators. And it is further ordered and decreed, that the costs of the audit and of the proceedings in the Orphans' Court, and the costs of this appeal, be paid by the appellees.